UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BITVESTMENT PARTNERS LLC,

                            Plaintiff,

            -against-

                                       13 Civ. 7632 (RWS)

COINLAB, INC., CLI HOLDINGS, INC., ALYDIAN
INC., PETER VESSENES, and JOHN DOE,

                         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF BITVESTMENT'S MOTION FOR A PRELIMINARY INJUNCTION

REYHANI NEMIROVSKY LLP
Bryan I. Reyhani (BR-9147)
Danielle Kiwak (DK-1212)
200 Park Ave., 17th FL
New York, NY 10166
(212) 897-4022
(212) 897-4031 (fax)
bryan@rnlawfirm.com
danielle@rnlawfirm.com

*Attorneys for Plaintiff*
*Bitvestment Partners LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................2

ARGUMENT ...........................................................................................................................4

I.     Bitvestment Has Standing to Pursue this Claim ............................................4
II.    CoinLab and Vessenes are Not Entitled to a Stay .........................................5
III.   Plaintiff Has A Likelihood of Success ...........................................................7
IV.    Plaintiff Has Suffered Irreparable Harm ........................................................8

CONCLUSION......................................................................................................................10

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Bitvestment

Partners LLC f/k/a Dalsa Barbour LLC ("Bitvestment" or "Plaintiff") respectfully

submits this reply memorandum of law in support of its application for a preliminary

injunction against the Defendants CoinLab Inc. ("CoinLab"), Peter Vessenes

("Vessenes") (collectively "Defendants"), CLI Holdings Inc. ("CLI Holdings"), Alydian

Inc. ("Alydian") and John Doe, an unknown investor.[1]

## PRELIMINARY STATEMENT

Defendants do not consider themselves bound by the Court's unambiguous

November 4, 2013 Temporary Restraining Order (the "TRO") and believe they can

breach it with impunity. This is exactly the same approach Defendants took with its three

prior contracts with Plaintiff, culminating with the August 14, 2013 Amended and

Restated Bitcoin Services Agreement ("Amended Agreement") and is precisely why the

parties are before the Court. A preliminary injunction is needed to force compliance by

Defendants and to prevent the ever-present irreparable harm to Bitvestment, which harm

increases with each passing day.

The TRO entered by this Court was clear and unambiguous – CoinLab *vis a vis* its

CEO Vessenes was ordered to utilize best efforts to mine and deliver Bitcoins to

Bitvestment.[2] Defendants proved their noncompliance with the TRO by unbelievably

admitting that they have made no efforts whatsoever to procure the services of miners or

equipment to deliver the Court-ordered Bitcoins to Bitvestment. *See* Vessenes

Declaration dated November 14, 2013 ("Vessenes Decl.") at ¶ 41 (stating CoinLab

---

[1] This Court has stayed the action as against CLI Holdings d/b/a Alydian.

[2] In addition, Defendants' now argue the need for a bond. After Plaintiff incurred the cost of the TRO-ordered bond, the Court vacated that requirement after appropriate briefing and Defendants' ambivalence. Thus, that bond was cancelled with the surety company. A bond should not be required upon entry of a Preliminary Injunction since the issue was considered and decided.

"needs to assess the current mining market and understand how a company could best do this."). Had CoinLab done as the Court directed, they likely would have fulfilled the terms of the Amended Agreement and this action essentially would be mooted.

Instead, Defendants curiously tried to recruit a technical expert to ascertain the viability of mining options[3] and worked to find an "expert" to provide the Court an unbiased report as to why mining would not yield financial benefits to Bitvestment. Vessenes Decl. at ¶¶ 42, 44-45. In reality, any potential profits to CoinLab are not as high as they once might have been; thus, CoinLab does not want to mine Bitcoins. Smaller (or any) profit, however, does not absolve CoinLab from mining and complying with the Court's express TRO and the Amended Agreement.

Contrary to Defendants' assertions, Bitcoin mining is not impracticable, as is demonstrated by the mining that contemporaneously continues around the world, including that by Alydian. Over 50,000 Bitcoins were mined since the issuance of the TRO yet, despite multiple demands, Plaintiff has yet to receive a single Bitcoin from Defendants. *See* Aff. of Daniel H. Gallancy dated Nov. 19, 2013 ("Gallancy PI Aff.") at ¶ 35. Their inexcusable lack of compliance with the TRO is an affront both towards the Court and common sense.

It seems that Defendants consider themselves excused from complying with the TRO because one of CoinLab's portfolio companies in which it is an investor, Alydian, filed for Chapter 11 bankruptcy protection. Defendants conveniently neglect the fact that

---

[3] Defendants' feigned ignorance as to how to mine Bitcoin is outrageous. Vessenes is the Chairman of the Bitcoin Foundation and both he and his chief engineer, Hans Olsen, are well-versed in this field. *See* Vessenes Decl. and Olson Decl. in Opp'n to Pl'.s motion for a Prelim. Injunc. Given their internal expertise, Defendants did not require outside expert assistance to mine, they simply failed to accomplish what was ordered and eschewed the TRO.

the Amended Agreement also is with CoinLab, Inc. and Vessenes, and they have not filed

for bankruptcy protection. CoinLab and Vessenes are running a scheme of corporate

three-card-monte by claiming they are unable to meet their contractual obligations

because certain corporate assets are under the Alydian umbrella and Alydian is afforded

Chapter 11 protection. CoinLab and Vessenes have the wherewithal, capacity and

knowledge to mine and have, in fact, previously mined. *See* Gallancy PI Aff. at ¶¶ 7-10,

12-18, 36-38. Indeed, Vessenes implicitly acknowledges as much when he says CoinLab

"*presently* has no capacity to mine bitcoins." Vessenes Decl. ¶ 24 (emphasis added.).

Despite Defendants' sleight of hand, they could quickly meet their contractual obligations

to deliver 7,984.006735 Bitcoins to Bitvestment by delivering such Bitcoins from its

stash of 15,101.29024042 mined Bitcoins. *See* Gallancy PI Aff. at ¶ 36.

Bitvestment's imminent danger of suffering irreparable harm is readily apparent.

Plaintiff respectfully requests that the Court grant the preliminary injunctive relief it is

seeking pursuant to F.R.C.P. 65, pending the outcome of this litigation.

## ARGUMENT

### I.    Bitvestment Has Standing to Pursue this Claim

Defendants' argument that Plaintiff lacks standing to bring this suit is without

merit. Plaintiff fully disclosed in its initial papers that a corporate name change had

occurred, and that Bitvestment was formerly known as Dalsa Barbour LLC. *See* Pl.'s

Memorandum of Law at 2 and Pl.'s Compl. at 1. In fact, this simple change of name was

further discussed and disclosed at the October 29, 2013 TRO hearing before the court.

N.Y. BOL § 801 provides that a corporation may amend its certificate of

incorporation, from time to time, such as to change its corporate name. Thus, this lawful

4

amendment of the corporate entity's name in no way constituted an assignment of the

Amended Agreement, and Bitvestment has standing.[4]

## II.    CoinLab and Vessenes are Not Entitled to a Stay

Defendants' motion to stay the proceeding as against CoinLab and Vessenes is

without merit.[5] A stay is improper because CLI Holdings d/b/a Alydian filed for

bankruptcy protection – not CoinLab and not Vessenes. There is no identity in interest

between and/or among the parties. Defendants are improperly attempting to use

Alydian's Chapter 11 filing as both a sword and a shield.

It is black-letter law that a suit against a co-defendant is not automatically stayed

by the debtor's bankruptcy filing. *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d

Cir. 2003) (citing 3 Collier on Bankruptcy § 362.03[3][d] (16th ed. 2011)). The only

time a stay will apply to non-debtor co-defendants is where there are unusual

circumstances, such as when a claim against the non-debtor will have an immediate

adverse economic consequence for the debtor's estate. *See Houndog Prods., LLC v.*

*Empire Film Grp., Inc.*, 767 F. Supp. 2d 480, 485-86 (S.D.N.Y. 2011).

The Second Circuit sets forth three examples of unusual circumstances that would

justify a stay against a non-debtor: (1) a claim to establish an obligation of which the

debtor is a guarantor; (2) a claim against a debtor's insurer; and (3) cases where there is

---

[4] We note that Defendants set forth no legal support for its seeming argument that the name change of a corporate entity actually creates a new-entity, because that is not the law. *See In re Salzman*, 61 B.R. 878, 886, 1986 Bankr. LEXIS 5908 (Bankr. S.D.N.Y. 1986) (rejecting debtors' argument that a name change creates a new corporation).

[5] Defendants' motion to stay also is procedurally improper. Plaintiff has the right to submit opposition papers, affidavits, and supporting documents to this motion, to which Defendants can then reply, before the court hears the matter. In submitting its motion with their opposition papers - when the Preliminary Injunction hearing is five days away - Defendants attempt to prevent Plaintiff from effectively opposing the motion. While the stay should be denied as lacking merit, at a minimum, the motion must be denied until a proper briefing schedule is set.

5

such identity between the debtor and co-defendant that the debtor may be said to be the

real party defendant. *Queenie, Ltd.,* 321 F.3d at 287-88. Courts applying a stay due to

unusual circumstances to a non-debtor do so rarely, and only when "a claim against the

non-debtor will have an immediate adverse economic consequence for the debtor's

estate." *Id.*; *see e.g. Velasquez v. Metro Fuel Oil Corp.*, 2012 U.S. Dist. LEXIS 166486

(E.D.N.Y. 2012) ("a 'stay clearly cannot be extended to the non-debtor' under the

unusual-circumstances test 'where the debtor and non-debtor co-defendant 'are joint

tortfeasors . . . .'") (citing *DeSouza v. PlusFunds Grp., Inc.*, 2006 U.S. Dist. LEXIS

53392 (S.D.N.Y. 2006) (without evidence which demonstrates a material impact upon the

debtor's reorganization effort, the stay cannot be extended to a solvent co-defendant).

Defendants' argument that the last of these categories, identity between

Defendants and debtor, entitles them to a stay is patently false and the cases cited by

Defendants are inapposite. *In re North Star Contracting Corp.*, 125 B.R. 368, 371

(S.D.N.Y. 1991) involved a plaintiff proceeding against an officer of a debtor company,

raising issues of indemnification that would affect the debtor's assets. CoinLab is not an

officer of either debtor and, unlike in *North Star*, Plaintiff is pursuing a separate cause of

action against the officer, Vessenes, than it is pursuing against the debtor Defendants.

*Compare Acker v. Wilger*, 2012 U.S. Dist. LEXIS 161628, *2-5 (S.D.N.Y. Oct. 25, 2012)

(distinguishing *North Star* and citing various cases where a stay was denied under the

identity exception; "the automatic stay does not extend to a nondebtor where a claim of

indemnity is conditional or otherwise uncertain or where the nondebtor's own conduct

gives rise to its liability.").

6

### III.     Plaintiff Has a Likelihood of Success

As the Court acknowledged with the issuance of the TRO, Plaintiff has a likelihood of ultimate success on the merits, having established the elements of a breach of contract. *See Readick v. Avis Budget Group, Inc.,* 2013 U.S. Dist. LEXIS 94611, *12-13 (S.D.N.Y. 2013) (breach of contract elements). Bitvestment's damages are apparent -- it still has not received any Bitcoins to date from CoinLab, notwithstanding the Court's TRO that CoinLab use best efforts to mine and deliver Bitcoins to Plaintiff.

Defendants admit they are not producing Bitcoins pursuant to their contractual agreement with Plaintiff. Vessenes Decl. ¶ 24 ("Coinlab does not own any Bitcoin mining equipment. Coinlab . . . presently has no capacity to mine bitcoins."). Instead, they allege only that they are excused because the "Disclaimer of Warranties" language, as defined by the Amended Agreement, applies.[6] Plaintiff strongly disagrees, and submits that Defendants failed to perform their contract was not due to forces outside of CoinLab's control, but rather are due to forces precisely within their control. Defendants have simply failed to act. *See* Gallancy PI Aff. ¶¶ 5-18; *407 East 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 23 N.Y.2d 275, (N.Y. 1968) (financial difficulty does not equate with impossibility); *Capital World Trading, LLC v. Next Up Funding, Inc.*, 2012 U.S. Dist. LEXIS 24246, 7 (S.D.N.Y., 2012) (same). In addition, CoinLab is financially capable of mining and delivering Bitvestment's Bitcoins -- Alydian filed for bankruptcy protection, not CoinLab. Moreover, Plaintiff believes that Defendants are able to satisfy

---

[6] Defendants' argument that the contract is impracticable is undermined by the fact that the network hash rate growth has actually *slowed* since the signing of the TRO. *See* Gallancy PI Aff, ¶ 31-32. Although mining is not easier, the pace of difficulty increase has temporarily subsided during the past two weeks and yet, even during this reprieve, CoinLab refused to use best efforts.

the contractual Bitcoin requirement, given their holding and/or control of

15,101.29024042 Bitcoins at address 12zZM5LQeC4xdtRMNw7DdJVcCRBQQ8Vb1t.

In any event, the determination of the issue of impracticality or impossibility rests

solely on matters of contractual interpretation and it is well settled that it is the

responsibility of the court to interpret an unambiguous contractual provision, not the

Defendants. *Hartford Accident & Indem. Co. v. Wesolowski*, 33 N.Y.2d 169, 350

N.Y.S.2d 895 (N.Y. 1973) (courts are to interpret ambigious terms unless "determination

of the intent of the parties depends on the credibility of extrinsic evidence or on a choice

among reasonable inferences to be drawn from extrinsic evidence").

## IV.    Plaintiff Has Suffered Irreparable Harm

Defendants argue that Plaintiff fails to show irreparable harm, alleging that this is

a contract case, that Bitcoins are the same as money and thus, Plaintiff's claim is

compensable with money damages. Def. Memo at 12 ("Plaintiff demands bitcoins. That

is, Plaintiff simply demands money."). Defendants, by grossly oversimplifying the

analysis at issue, have ignored that preliminary injunctions may be granted in contract

cases where, as here, the damages from the breach of contract are difficult to estimate.

While, generally, in a pure contract money action, there is no right of the plaintiff

in some specific subject of the action (because the plaintiff is considered to have an

adequate remedy in the form of monetary damages), there is an important exception when

"the subject matter of a particular contract is unique and has no established market

value." *Destiny USA Holdings, LLC v. Citigroup Global Mkts. Realty Corp.*, 69 A.D.3d

212, 217, 889 N.Y.S.2d 793 (N.Y. App. Div. 4th Dep't 2009) (noting the same reasoning

applies with respect to a cause of action for specific performance and citing *Van Wagner*

*Adv. Corp. v S & M Enters.*, 67 NY2d 186, 193, 501 NYS2d 628 (1986)); *see also Edge Group Waiccs LLC v. Sapir Group LLC*, 705 F. Supp. 2d 304 (S.D.N.Y. 2010) (awarding specific performance because legal damages could not compensate plaintiff fully). A Bitcoin falls squarely into this exception because its unique character renders it difficult to calculate any damages sustained by Bitvestment. *See* Gallancy PI Aff. at ¶¶ 39-49.

Bitcoins are wildly speculative and any damages sustained could not be calculated with reasonable precision. *See* Gallancy PI Aff., ¶ 40-47. In fact, the value of a Bitcoin over one year has ranged from a low of $11.57 to $900.98. *Id.* ¶ 45. Since this action was initiated, the value of a Bitcoin has increased by over 200%, from $205 to its current value $606.74. *Id.* Bitcoins trade on a number of exchanges and the prices vary greatly across the board. Moreover, certain Bitcoins have traits that differ from other Bitcoins. *Id.* ¶ 44. Mastercoins, for example, were recently trading at twice the value of Bitcoins. *Id.* Other Bitcoins are attachable to specific objects and real properties rendering them to be of greater value than an ordinary Bitcoin. *Id.*

Indeed, providing money damages would impose an unacceptably high risk of under-compensation on Plaintiff. This is exactly the situation in which courts recognize that an injunction with specific performance is necessary. In *Edge Group Waiccs LLC*, the court was considering whether it was appropriate to order specific performance of a contract because of the inability of legal damages to compensate plaintiff fully. 705 F. Supp. 2d at 313-14. The court noted that where a property value is uncertain, there is a risk that the damages to the aggrieved party cannot be reliably determined:

> What matters, in measuring money damages, is the volume, refinement, and reliability of the available information about substitutes for the subject matter of the breached contract. When the relevant information is thin and unreliable, there is a substantial risk that an award of money damages will

> either exceed or fall short of the promisee's actual loss. Of course this risk
> can always be reduced -- but only at great cost when reliable information
> is difficult to obtain. Conversely, when there is a great deal of consumer
> behavior generating abundant and highly dependable information about
> substitutes, the risk of error in measuring the promisee's loss may be
> reduced at much smaller cost. In asserting that the subject matter of a
> particular contract is unique and has no established market value, a court
> is really saying that it cannot obtain, at reasonable cost, enough
> information about substitutes to permit it to calculate an award of money
> damages without imposing an unacceptably high risk of
> undercompensation on the injured promisee.

*Id.* at 313 ("courts look to the specific circumstances of the case to determine whether there is a sufficiently reliable means of measuring value for purposes of awarding contract damages.") (emphasis added).

In addition, Defendants completely ignore their contractual acknowledgment that a breach could cause irreparable harm and would entitle Plaintiff to injunctive relief. *See* Gallancy TRO Aff, Ex. H, Amended Agreement. Defendants were sophisticated entities, negotiating at arms-length. They were aware of the consequences of a breach, and expected that a breach likely would be enjoined. *See e.g. North Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. N.Y. 1999) (affirming the issuance of a preliminary injunction where the contract contained an acknowledgment that a breach would cause 'irreparable injury' to the plaintiff). Defendants should be held to their agreement.

## CONCLUSION

For the foregoing reasons, Plaintiff Bitvestment Partners LLC respectfully requests that the Court enter judgment in its favor for injunctive relief, continuing the restraints set forth in the TRO and further requiring Defendants to employ best efforts as set forth in the proposed accompanying order or, alternatively, requiring delivery of the 7,984.006735 Bitcoins in Defendants' control to Plaintiff.

10

Dated: November 19, 2013
        New York, New York

Respectfully submitted,

REYHANI NEMIROVSKY LLP

By: _____

Bryan Reyhani, Esq. (BR-9147)
Danielle Kiwak, Esq. (DK-1212)
200 Park Ave., 17th FL
New York, NY 10166
(212) 897-4022
bryan@rnlawfirm.com
danielle@rnlawfirm.com

*Attorneys for Plaintiff*
*Bitvestment Partners LLC*

11