UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BITVESTMENT PARTNERS LLC,

                Plaintiff,

      -against-                                              13 Civ. 7632 (RWS)

COINLAB, INC., CLI HOLDINGS, INC., ALYDIAN
INC., PETER VESSENES, and JOHN DOE,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

# SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF BITVESTMENT'S MOTION FOR A PRELIMINARY INJUNCTION

REYHANI NEMIROVSKY LLP
Bryan I. Reyhani (BR-9147)
Danielle Kiwak (DK-1212)
200 Park Ave., 17th FL
New York, NY 10166
(212) 897-4022
(212) 897-4031 (fax)
bryan@rnlawfirm.com
danielle@rnlawfirm.com

*Attorneys for Plaintiff*
*Bitvestment Partners LLC*

**TABLE OF CONTENTS**

Page

**PRELIMINARY STATEMENT** ..................................................................................................2

**ARGUMENT** ................................................................................................................................3

    I.       Performance of the Contract is Not Excused by Impossibility or Impracticability3

    A.  Defendants' Actions to Comply with the Amended Agreement
Are Insufficient .............................................................................................................3

    B.  Defendants Make No Showing of "Impossibility"..........................................................6

        a.   The Defense of Impossibility is Applied Narrowly ...............................................6

        b.   Bitcoin Mining Is Not Objectively Impossible .....................................................7

        c.   The Increase in the Rate of Mining Difficulty and the Financial Hardship of
Alydian Was Foreseeable ......................................................................................9

    II.     Defendants' Disregard for the Judicial System ............................................................11

**CONCLUSION** .........................................................................................................................12

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff Bitvestment Partners LLC f/k/a Dalsa Barbour LLC ("Bitvestment" or "Plaintiff") respectfully submits this supplemental memorandum of law in support of its application for a preliminary injunction against the Defendants CoinLab Inc. ("CoinLab"), Peter Vessenes ("Vessenes") (collectively "Defendants"), CLI Holdings Inc., Alydian Inc. and John Doe, an unknown investor.[1]

**PRELIMINARY STATEMENT**

Since the Court is aware of the relevant facts of this matter, and such facts are also forth in Plaintiff's accompanying Proposed Findings of Fact and Conclusions of Law, Plaintiff will refrain from a full recitation herein. Suffice it to say, however, that Defendants' purported "impracticability" defense fails factually, logically and legally.

Defendant CoinLab is not honoring its Amended Agreement with Bitvestment because it chooses not to – it is as simple as that. The purported change in technology – a decrease in mining chipset size and an increase in the Bitcoin network hashrate which supposedly has led to an inability to generate bitcoins in excess of expenses – is not only an immaterial sideshow, but is admitted to be wholly untrue by Vessenes himself.

Indeed, in at least two sets of testimony presented by Vessenes before the bankruptcy court[2] in connection with the very profitable Alydian's Chapter 11 petition, Vessenes has admitted that Alydian, since it filed its Chapter 11 petition on November 1, 2013 in a transparent attempt to duck this Court's jurisdiction (but likely soon to return if the bankruptcy petition is dismissed as a sham proceeding), has mined approximately 4,500 bitcoins, that the value of such bitcoins is millions of U.S. dollars in excess of

---

[1] This Court has stayed the action as against CLI Holdings d/b/a Alydian ("Alydian").

[2] The bankruptcy proceeding of Alydian is U.S. Bankruptcy Court, Washington State, *In re CLI HOLDINGS, INC. dba ALYDIAN*, No. 13-19746-KAO ("Bankruptcy Proceeding").

2

Alydian's costs (in December 2013, Alydian's net profit was approximately $2 million in U.S. Dollar terms), and that Alydian has even transferred bitcoins to CoinLab since the bankruptcy petition was filed.

Bitcoin miners, including Alydian, are mining thousands of bitcoins with 65 nanometer or larger (or older) chipsets and, despite the increase in network hashrate, the enormous increase in value of Bitcoin has rendered Bitcoin mining, including that of Alydian, wildly profitable.  It is neither impossible nor impracticable to mine bitcoins.  Purported impracticability is nothing more than CoinLab's thinly-veiled excuse to keep for itself the now very valuable bitcoins that it has mined, shirk its contractual obligations and force Bitvestment to jump over repeated legal hurdles to collect the bitcoins in CoinLab's possession, that are due and owing to Bitvestment.  This Court needs to put an end to CoinLab's antics that are in direct contravention to basic contract law and order the delivery of 7,984.006735 bitcoins to Bitvestment to which it is entitled.

## ARGUMENT

### I. Performance of the Contract is Not Excused By Impossibility Or Impracticability

Difficulty or hardship in performing a term of a contract does not excuse performance of the contract due to impossibility or impracticability.  *Kel-Kim Corp. v. Central Markets, Inc.*, 70 N.Y. 2d 900, 902 (1987); *407 East 61st Garage*, Inc. v. Savoy Fifth Avenue Corp., 23 N.Y.2d 275, 281 (1968).

#### A. The Defendants' Actions To Comply With The Amended Agreement Are Insufficient

The party pleading impossibility as a defense must demonstrate that it took virtually every action within its powers to perform its duties under the contract.  *Kama*

*Rippa Music, Inc. v. Schekeryk*, 510 F.2d 837, 842-843 (2d Cir. N.Y. 1975) ("To recognize impossibility where, as in the case before us, the party pleading the defense has intentionally incapacitated itself from performing would defy this case law and all good sense."). Defendants have made no effort to comply with the August 14, 2013 Amended and Restated Bitcoin Services Agreement ("Amended Agreement"), choosing instead to hide behind an improperly pled "legal impossibility" argument to excuse performance.

In fact, CoinLab admits it has not taken all the actions within its power to perform its duties under the contract, and therefore it cannot assert this defense. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810, 1990 U.S. App. LEXIS 17585 (2d Cir. N.Y. 1990) (where a party makes no claim that it took virtually every action within its power to perform its duties under the contract, it cannot assert the defense of impossibility). The first TRO entered by this Court was clear and unambiguous – CoinLab *vis a vis* its CEO Vessenes was ordered to utilize best efforts to mine and deliver Bitcoins to Bitvestment. Defendants proved their noncompliance with the TRO by unbelievably admitting that they have made no efforts whatsoever to procure the services of miners or equipment to deliver the Court-ordered bitcoins to Bitvestment. *See* Vessenes Declaration dated November 14, 2013 ("Vessenes Decl.") at ¶¶ 41, 42, 44-45 (stating CoinLab "needs to assess the current mining market and understand how a company could best do this.").

CoinLab is required by the Amended Agreement to use its best efforts and mine Bitcoin for Bitvestment. "Under New York law, a contract need not explicitly define 'best efforts' for its 'best efforts' provision to be enforceable." *Us Airways Group v. British Airways Plc*, 989 F. Supp. 482, 491 (S.D.N.Y. 1997) (*citing Pfizer Inc v. PCS Health Sys., Inc.*, 234 A.D.2d 18, 19, 650 N.Y.S.2d 164, 165 (1st Dep't 1996) (affirming

4

injunction enforcing defendant's promise "to 'use its best efforts' to promote plaintiff's products and treat them in a 'favorable manner'") and *Kroboth v. Brent*, 625 N.Y.S.2d 748, 749-750 (3d Dep't 1995) ("'best efforts' requires that a party pursue 'all reasonable means for obtaining the promised goal'")). For example, in *Pfizer Inc.*, the court concluded that the defendant remained bound by contractual obligations to use 'best efforts' and perform - even though the agreement had become disadvantageous to defendant. 234 A.D.2d at 18-19 (affirming entry of an injunction, stating "the remedy of an injunction was appropriate here in light of the difficulty and uncertainty in calculating the substantial future damages that plaintiff would suffer from defendant's breach of the agreement (*see, Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 193).").

Although Defendants plead the legal conclusion that they used best efforts to mine bitcoins, "but the increase in difficulty made performance impracticable, if not impossible," the facts alleged do not meet the few, extreme circumstances in which New York courts have allowed the defense of impossibility, and are wholly inapposite to Vessenes's recent testimony that demonstrates ongoing, profitable mining. To begin with, Defendants admit that Alydian is currently mining bitcoin, and doing so profitably. *See* Bryan Reyhani Jan. 9, 2014 Decl. ("Reyhani Decl."), Ex. A, Bankruptcy Proceeding, Dec. 3, 2013 341 Meeting of Creditors Tr. ("Bankruptcy Tr.") at 14:17-18; 15:1-11; and 16:2-7; Reyhani Decl., Ex. B, Bankruptcy Proceeding, Jan. 7, 2014 Deposition of Peter Vessenes Tr. ("Vessenes Bankruptcy Depos.") 140:7-25, 145:21-24; 146:1-4 (Alydian mined 4,500 bitcoins between December-January, 2014 with a value over $800 per coin), 213:21-214:18; 214:19-215:6, 216:1-12 (estimating million dollar profits for Alydian).

Defendants also admit that a miner could be contracted to fulfill Bitvestment's contract. Dkt 24 at 78:19-79:7 Vessenes Cross (admitting that CoinLab could start a mining pool and incentivize miners to produce Bitcoin for Bitvestment, or could make an announcement on its website asking miners to begin to mine bitcoins for CoinLab). In fact, all Defendants really allege is that their initial poor business decisions in delaying to deploy Alydian's mining capabilities caused months to pass before Alydian actually engaged in mining. To excuse CoinLab's performance under these circumstances would undermine our system of financial contracting.

### B. Defendants Make No Showing Of "Impossibility"

Defendants cannot, as a matter of law, meet the requirements of an impossibility defense. New York courts are consistently hostile to the defense and allow it to excuse performance only in the most extreme circumstance. As the Second Circuit has explained, impossibility is "an inability to perform as promised due to intervening events, such as an act of state or destruction of the subject matter of the contract . . . ." *United States v. General Douglas MacArthur Sr. Village, Inc.*, 508 F.2d 377, 381 (2d Cir. 1974).

#### a. The Defense Of Impossibility Is Applied Narrowly

In each of the cases below, the court refused to excuse performance of a contract based on impossibility:

- *General Elec. Co. v Metals Resources Group Ltd.*, 293 AD2d 417, 741 N.Y.S.2d 218 (1st Dept 2002) (parties to a contract have not been permitted to avoid contractual obligations on the ground of impossibility where a commodity swap agreement was rendered extremely disadvantageous due to an increase in the price of cobalt)

- *Sassower v Blumenfeld*, 24 Misc. 3d 843, 878 N.Y.S.2d 602 (Sup. Ct. 2009) (financial condition of a contracting party changed due to the fraud of Bernie Madoff not impossibility)

6

- *Kel Kim Corp.*, 70 N.Y.2d 900, 902 (party unable to secure the level of insurance required due to a liability insurance crisis is not excused; this problem "could have been foreseen and guarded against" in the contract).

- *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. N.Y. 1990) (decline in stock price after 1987 market crash forcing party to pay $10 million adjustment does not excuse performance; fact that performance is "more onerous does not establish a basis for a defense of frustration of purpose or commercial impracticability").

- *Bank of New York v Tri Polyta Finance B.V.*, 2003 U.S. Dist. LEXIS 6981, 2003 WL 1960587 (S.D.NY 2003) (party was unable to generate sufficient cash flow due to the catastrophic economic collapse of the Asian market)

- *Ogdensburg Urban Renewal Agency v. Moroney*, 42 A.D.2d 639, 640 (N.Y. App. Div. 3d Dep't 1973) (where appellant admitted that it knew at the time it entered into the contract, that it intended to rely on unattainable funds of a third-party in order to perform the contract, it could not use the defense of impossibility - particularly where the agreement was silent concerning the obtaining of this approval).

- *Urban Archaeology Ltd v 207 E. 57th St. LLC*, 68 A.D.3d 562, 562, (N.Y. App. Div. 1st Dep't 2009) (an economic downturn can be foreseen and guarded against).

- *Chase Manhattan Bank v. Traffic Stream Infrastructure*, 52 Fed. Appx. 528, 530, 2002 U.S. App. LEXIS 24034 (2d Cir. N.Y. 2002) (Defendant's "alleged impossibility . . . is occasioned by hardship that is purely financial, and . . . arguably foreseeable, and therefore insufficient to establish impossibility of performance under New York law.").

Thus, given that Defendants have demonstrated and admit that Bitcoin mining is possible (and profitable) and that they are in fact mining currently, the impossibility of performance doctrine cannot relieve Defendants of their contractual obligations.

### b. Bitcoin Mining Is Not Objectively Impossible

Defendants cannot demonstrate that performance has been rendered objectively impossible. "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." *Kel-Kim Corp.*, 70 N.Y. 2d at 902. Particularly relevant in this case is the rule in New York that "where impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, even to the extent of

insolvency or bankruptcy, performance of a contract is not excused." *Bank of America Nat'l Trust & Sav. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260, 267, 1990 U.S. Dist. LEXIS 7568 (S.D.N.Y. 1990) (discussing frustration of purpose). "[A] party [may not] abrogate a contract, unilaterally, merely upon a showing that it would be financially disadvantageous to perform it; were the rules otherwise, they would place in jeopardy all commercial contracts." *407 E. 61st Garage, Inc.*, 23 N.Y.2d at 282.

Defendants' impossibility allegations fall within this line of 'financial hardship' cases.  According to Defendants, changes in technology – namely the fact that the rate of mining difficulty was increasing – rendered performance under the agreement "impracticable" because it would no longer generate profit.  Nov. 14, 2013 Decl. of Peter Vessenes at ¶¶ 31, 33, 38.  Defendants do not deny that changes in the rate of mining difficulty were anticipated. *Id*. ¶ 34 (arguing only that the increase "was much quicker than anybody at Alydian had expected, and indeed quicker than most people in the Bitcoin industry had expected.").  Nor do Defendants claim that the increase in difficulty rate prevents mining; their only claim is that mining will be less profitable. *Id.* ¶ 38 ("This increase in difficulty made the Agreement impracticable. . . I do not believe there is a reasonable and high-certainty way for a company that does not currently own mining systems to profitably purchase, wait and deploy.").  Yet Vessenes's own testimony demonstrates that Alydian's Bitcoin mining is very profitable.  Vessenes Bankruptcy Dep. 140:7-25, 145:21-24; 146:1-4 ( Alydian mined approximately 4,500 bitcoins since November 1, 2013 with each Bitcoin valued at $800-900 per coin).

At its essence, Defendants merely allege that mining technology is getting faster, rendering Alydian's technology slower and less profitable.  However, lack of funds,

8

"even to the extent of insolvency or bankruptcy," can never excuse contractual performance.  *Venezolanos*, 740 F. Supp. at 267 (rejecting defendants argument that performance was impossible, even though compliance would "now cost them five times the amount" that they had anticipated at the time of entering in to the contract, would create substantial financial hardship, and may in fact lead to bankruptcy).

In this action, Defendants concede, as they must, that they are capable of mining, and that the increase in mining speed only reduces the amount of bitcoins yielded, rather than prohibits the mining of Bitcoin by CoinLab.  Vessenes Decl. ¶ 47 ("Given its intimate knowledge of the Bitcoin mining industry, CoinLab does not believe that, at present, there are ways to invest in Bitcoin mining that have a reasonable likelihood of returning capital, much less generating the extra earnings that the contract with [Bitvestment] would require."  Again, these statement are inapposite to Vessenes recent testimony showing millions of dollars in profits to Alydian *since* it filed for Chapter 11 protection due to its having mined approximately 4,500 bitcoins.  Reyhani Decl., Ex. B 140:7-25, 145:21-24; 146:1-4.  Such mining has occurred, of course, using Alydian's 65 nanometer chip architecture.  Bankruptcy Tr. 14:17-18; 15:1-11; and 16:2-7.  Accordingly, Defendants have failed to show, and have in fact eviscerated their own defense by the plainly profitable mining occurring under the jurisdiction of the bankruptcy court, that Bitcoin mining is not objectively impossible.

### c. The Increase In The Rate Of Mining Difficulty And The Financial Hardship Of Alydian Was Foreseeable

In addition to failing to show that performance is not objectively impossible, Defendant cannot show that "the impossibility [was] produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim*, 70 N.Y.2d

9

at 902; *Venezolanos, S.A.*, 740 F. Supp. 260, ("The defense is not available where . . . the event which renders the performance impossible could have been anticipated and provided for in the contract."). In the instant case, the issues of Alydian's financial state and whether the changes in technology would impact Defendants' best efforts mining obligations could have been foreseen and guarded against.

Start-up business ventures are often fraught with risk and there were signs of trouble well in advance of the parties' execution of the Amended Agreement. Dkt 24 at 123:8-124:1 Olsen Cross (noting that prior to entering into the Amended Agreement in August 2013, management at CoinLab and Alydian were aware that, absent a cash infusion, bankruptcy for Alydian was a real possibility.); Dkt 24 at 118:22-119:11 Olsen Cross (admitting that start-ups generally carry losses for quite a long time before they're profitable); Dkt 24 at 45:18-46:9 Vessenes direct (noting that in the summer of 2013, there was significant debate whether Alydian should continue mining).

At the time prior to entering into the Amended Agreement, CoinLab and Alydian were both aware that the Bitcoin industry was shifting from 65-nanometer chips, which Alydian intended to use, towards 28 nanometer chipsets. Dkt 24 at 85:19-24 Vessenes Cross (prior to the August Amended Agreement "we certainly knew 28-nanometer chips were coming."); 140:10-141:9 Gallancy Direct; and 122:16-123:7 Olsen Cross (prior to the August Amended Agreement, Alydian and CoinLab were aware that a cash infusion was needed to deploy existing technology, "otherwise, we would not be providing any return."). Defendants' failure to provide for termination in the case of a wholly foreseeable event precludes excuse of performance on these grounds. *Housman v. Media Tech. Corp.,* 1996 U.S. Dist. LEXIS 1597, 8-10 (S.D.N.Y. 1996).

10

In short, performance is not "impossible." CoinLab and Vessenes have the wherewithal, capacity and knowledge to mine and have, in fact, previously mined. *See* Dkt 24 at 33:12-13 Vessenes direct (CoinLab has run a mining pool); Dkt 24 at 85:3-5 Vessenes Cross (Alydian's equipment to this day can generate bitcoins); Dkt 24 at 117:22-118:7 Olsen direct (Alydian is operating, producing about 40 bitcoin a day "Call it business as usual."); Reyhani Decl. Ex. B, Bankruptcy Dep. Tr. 140:7-25(Alydian mined 2,500 Bitcoin in Dec.), 145:21-24 (anticipates between 1,500 and 2,000 in January); 146:1-4 (predicts 900-1,100 for February). CoinLab merely does not wish to devote the resources to continue mining so that it can comply with the Amended Agreement. Dkt 24 at 94 Vessenes re-cross (complying with the TRO would mean CoinLab would be out-of-pocket money); Dkt 24 at 68:6-13 Vessenes Direct ("this is why I believe the contract's impracticable . . . no one has suggested a way that comes even close to returning capital and operating expenses."). Where, as here, the risk which causes the alleged impossibility of performance was foreseeable, could have been accounted for and allocated in the contract, failure to perform cannot be excused.

## II.     Defendants' Disregard For The Judicial System

Defendants continue to illustrate complete disregard for the judicial process. Just as Defendants' prior conduct has shown that they did not consider themselves bound by the Court's unambiguous November 4, 2013 TRO or the three prior contracts with Plaintiff, culminating with the August 14, 2013 Amended and Restated Bitcoin Services Agreement ("Amended Agreement"), Defendant Peter Vessenes's conduct at his Rule 2004 deposition in the Bankruptcy Proceeding on Tuesday, January 7, 2014 illustrates this disrespect for the judicial process. Vessenes, instead of providing forthcoming

11

information on behalf of the Debtor Alydian as he was obligated to do, provided vague and evasive answers, and was, at times, *knitting a hat* during his testimony.[3]  *See* Reyhani Decl. Ex. B, Depos. Tr. Defendants feel they are above the judicial process and immune from compliance with judicial orders.  *See e.g. United States v. Int'l Bhd. of Teamsters*, 816 F. Supp. 864, 874, 1992 U.S. Dist. LEXIS 16422, 142 L.R.R.M. 2620, 124 Lab. Cas. (CCH) P10,554 (S.D.N.Y. 1992) (noting that, where defendants "ceaselessly have disregarded their agreements as well as an order of this Court," and orchestrated an impossibility argument to avoid compliance with a settlement agreement, the court would entertain an order to show cause why respondents should not be held in criminal contempt).

## CONCLUSION

For the foregoing reasons, Plaintiff Bitvestment Partners LLC respectfully requests that the Court enter judgment in its favor for injunctive relief, continuing the restraints set forth in the TRO by requiring CoinLab to turn over to Bitvestment's counsel 7,984.006735 bitcoins to be held in escrow pending the conclusion of this matter, and employ best efforts as set forth in the proposed accompanying order or, alternatively, requiring the immediate delivery of the 7,984.006735 Bitcoins in Defendants' control to Plaintiff.

---

[3] Notably, only *after* Vessenes's testimony wherein he admitted Alydian transferred "all their bitcoin" to CoinLab on the eve of bankruptcy, did Alydian finally came clean and file an Amended Statement of Financial Affairs in the Bankruptcy Proceeding, further illustrating its transfer of bitcoins to CoinLab the day before the bankruptcy petition.  *See* Reyhani Decl. at Exs. B (Tr. 155:7-157:9) and C at p. 2.


Dated: January 9, 2014
      New York, New York

                        Respectfully submitted,

                        REYHANI NEMIROVSKY LLP

                        By: */s/ Bryan I. Reyhani*
                            Bryan Reyhani, Esq. (BR-9147)
                            Danielle Kiwak, Esq. (DK-1212)
                            200 Park Ave., 17th FL
                            New York, NY 10166
                            (212) 897-4022
                            bryan@rnlawfirm.com
                            danielle@rnlawfirm.com

                            *Attorneys for Plaintiff*
                            *Bitvestment Partners LLC*