**UNITED STATES DISTRICT COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

|  |  |
|---|---|
| BITVESTMENT PARTNERS LLC, | 13 CV 7632 (RWS) |
| Plaintiff, | **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. |  |
| COINLAB, INC., CLI HOLDINGS, INC., ALYDIAN INC., PETER VESSENES and JOHN DOE, |  |
| Defendants. |  |

## I.      <u>INTRODUCTION</u>

1.      Plaintiff moved for a preliminary injunction requesting specific performance of an August 13, 2013 amended agreement between Dalsa Barbour LLC on the one hand, and CoinLab, Inc. ("CoinLab") and CLI Holdings, Inc., dba Alydian ("Alydian") on the other hand (the "Amended Agreement").

2.      On November 1, 2013, CLI Holdings, Inc. filed for bankruptcy protection and, accordingly, the lawsuit in this district against CLI Holdings, Inc. is stayed pursuant to the automatic bankruptcy stay, 11 U.S.C. § 362(a).  Plaintiff seeks no preliminary injunctive relief against the individual defendants.  Accordingly, the only issue before the Court is whether an Fed. R. Civ. P. Rule 65 Preliminary Injunction should be issued against CoinLab.

3.      The Court conducted an evidentiary hearing on November 20 and November 21, 2013.  Testifying at the hearing was Plaintiff's representative, Daniel Gallancy, and two witnesses called by Defendant CoinLab: Peter Vessenes and Hans Olsen.  Mr. Vessenes is the CEO of CoinLab and General Manager of Alydian.  Mr. Olsen is an independent contractor presently managing engineering and operational activities at Alydian.

4.      The court has considered the live testimony and the written submissions of the parties.  A party moving for a preliminary injunction must demonstrate: (1) a showing of

irreparable injury <u>and</u> (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant.  *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2nd Cir. 2004).  Applying the foregoing standard here, Plaintiff has not satisfied its burden for issuance of a preliminary injunction and Plaintiff's motion is denied.

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  <u>Bitcoin Mining and Defendants' Bitcoin Mining Operations</u>

5.     Alydian is in the business of manufacturing and operating "bitcoin mining rigs." Bitcoin mining requires highly-specialized hardware, known as Application-specific Integrated Circuits ("ASICs") to verify transactions on the Bitcoin computer network.  Specifically, bitcoin miners connect ASICs to the Internet to verify the time stamp of bitcoin transactions, ensuring that no person may spend a bitcoin twice and no person can spend a bitcoin he does not already have.  In exchange for this work, the bitcoin network awards the miner with bitcoins. Bitcoin mining was once a very profitable exercise.  However, as more and more miners have joined the bitcoin network, it has become more and more difficult for any particular miner to perform the complex mathematical operations required to verify bitcoin transactions.  The bitcoin network itself automatically increases the difficulty to ensure that only 3,600 bitcoins may be mined in any one day.  It is a force entirely outside of Defendants' control.  As this difficulty has increased, more complex and expensive ASICs have been required to perform those operations.

6.     Literally thousands of bitcoins (approximately 3,600) become available for mining every day, and bitcoins will continue to become available until the year 2140.  Bitcoins are fungible, non-unique units of digital currency.  In March, the Department of the Treasury issued its guideline identifying bitcoins as a "decentralized, convertible virtual currency."[1]

7.     A bitcoin is readily exchangeable for dollars, euros or any other traditional currency on multiple digital currency exchanges.  At the preliminary injunction hearing,

---

[1] http://fincen.gov/statutes_regs/guidance/html/FIN-2013-G001.html

Plaintiff acknowledged that there are multiple bitcoin exchange services which can exchange bitcoin for currency. Just like any other currency, one bitcoin is functionally indistinguishable from any other. To say that one bitcoin is unique from any other is like saying one dollar is unique from another dollar. It is a distinction without a difference. Plaintiff asserts that bitcoins are unique and not fungible. In fact, just like every dollar bill may have unique characteristics (e.g., a serial number), each bitcoin has unique identifying characteristics (e.g., the block chain). However, like each dollar bill, the value of each bitcoin is indistinguishable for every other bitcoin.

### B. **Defendants' Corporate Structure and Alydian Bankruptcy**

8.      Defendant CoinLab, Inc. ("CoinLab") is a Delaware Corporation based in Washington State. CoinLab is a bitcoin incubator that invests in and operates bitcoin-related ventures. CoinLab, Inc. owns a 65% interest in CLI Holdings, Inc.

9.      Alydian had a number of "prebuyer" Customers of bitcoins which had entered into agreements with Alydian to pay in advance for bitcoins to be mined by Alydian in the future. The contracts provided that, if bitcoins were not mined, then Alydian had the right to refund the money paid. Initially, Mr. Gallancy was one of the prebuyers and had paid $75,000 toward future delivery of bitcoins by two separate agreements, dated December 13, 2013 ($50,000) and March 7, 2013 ($25,000).

10.      In August 2013, the parties entered into the Amended Agreement. Alydian had become aware of the need for increased funding for capital and operating expenses of its bitcoin mining rigs. Plaintiff's representative, Mr. Gallancy, had a relationship with potential investors, Cedar Hill Capital ("Cedar Hill"), and agreed to perform due diligence on behalf of Cedar Hill. Mr. Gallancy had an expectation that he would be compensated by Cedar Hill at a rate of approximately 5% of the investment in exchange for his due diligence services.

11.      The Amended Agreement provided that

CoinLab agree[s] to dedicate 100% of its mining output (other than mining output that is required to satisfy CoinLab's obligations to Crystal Island and mining output that is required to meet CoinLab's appropriate mining operating expenses and capital

expenditures subject as approved by all parties) from the date of this Agreement to producing Bitcoin for Dalsa Barbour until such time as Dalsa Barbour receives 7,984.006735 Bitcoins from CoinLab.

Relying on this clause, Plaintiff seeks a preliminary injunction requiring CoinLab to transfer 7,984.006735 Bitcoins to Plaintiff.

### C. Plaintiff Cannot Show Irreparable Harm or that Specific Performance is Warranted

12.      A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1998) (emphasis in original) *quoting* 11A C. Wright, et al., Federal Practice and Procedure §2948 at 129-130 (2d. ed. 1995).  A party moving for a preliminary injunction must demonstrate, *inter alia*, a showing of irreparable injury.  *MONY Group, Inc. v. Highfields Capital Mgmt., L.P.*, 368 F.3d 138, 143 (2nd Cir. 2004) *citing Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 149 (2nd Cir. 1999).

13.      An irreparable injury is one that cannot be redressed through a monetary award.  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2nd Cir. 1995).  Where monetary damages are adequate compensation, a preliminary injunction will generally not issue.  *Goldblatt v. Englander Communications, LLC*, 431 F.Supp.2d 420 (S.D.N.Y. 2006).

14.      Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2nd Cir. 1995).  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.  *Id.*

15.      Similarly, Plaintiff cannot demonstrate that specific performance is an appropriate remedy for the alleged breach.  If an injury can be appropriately compensated by an award of monetary damages, then an adequate remedy at law exists, and no irreparable injury may be found to justify specific relief.  *Oracle Real Estate Holdings I LLC v. Adrian Holdings*

*Co.*, 582 F.Supp.2d 616, 625 (S.D.N.Y. 2008) *citing Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 404 (2nd Cir. 2004); *see also*, *Aristocrat Leisure Ltd. v. Deutsche Bank Trust*, 2006 U.S. Dist. LEXIS 34709, *26 (S.D.N.Y. May 31, 2006) (specific performance is proper only where the subject matter of the particular contract is unique and has no established market value).  "[N]ot all bargained-for contractual provisions provide a basis for injunctive relief, since a rule to this effect would 'eviscerate the essential distinction compensable and non-compensable harm.'"  *Id*. (internal citations omitted).  The Second Circuit has noted that before the 'extraordinary' equitable remedy of specific performance may be ordered, the party seeking relief must demonstrate that remedies at law are incomplete and inadequate to accomplish substantial justice.  *Aristocrat* at *26.

16.     Under NY law, a party seeking specific performance must demonstrate that the moving party has no adequate remedy at law.  *Aristocrat* at *26 n. 11 (internal citations omitted).  Plaintiff's claims are for damages that are measurable in U.S. dollars.

17.     Plaintiff alleges that "CoinLab is among the world's largest providers of technology and services for the digital currency Bitcoin."  Complaint at ¶ 2.  There is no allegation or evidence to support the assertion that CoinLab would not have the assets to satisfy a money judgment, should a judgment issue.

18.     Bitcoin is a computer protocol that enables the trading of bitcoins, a digital currency.  Bitcoins can be used to purchase items online, and some retail establishments have begun accepting bitcoins in exchange for gift cards or other purchases.  *SEC v. Shavers*, 2013 U.S. Dist. LEXIS 110018, *2 (E.D.Tex. Aug. 6, 2013).

19.     The Court finds that bitcoin are virtual digital currency, whose value is measurable in dollars.  Accordingly, Plaintiff cannot satisfy the first prong of the preliminary injunction standard.  Similarly, Plaintiff has not satisfied its burden to establishing that specific performance is available for the alleged breach by Coinlab.

20.     Plaintiff has made no demonstration that there is no adequate remedy at law in the event it is able to establish its claims at trial.  Accordingly, Plaintiff's Motion for

Preliminary Injunction is denied.

**D. Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits to Make them a Fair Ground for Litigation and the Balance of Hardships Tipping in its favor**

21.     Plaintiff alleges that CoinLab breached the Amended Agreement because it has not delivered 7,984.006735 bitcoins. The evidence demonstrated that CoinLab possesses in excess of 7,984.006735 bitcoins.  However, the evidence was uncontroverted that CoinLab (as opposed to Alydian) has not mined bitcoins and is not in the business of mining bitcoins. Without "mined" bitcoins, CoinLab has no obligation to deliver 7,984.006735 bitcoins to Plaintiff.

22.     The parties do not dispute whether CoinLab (as opposed to Alydian) has, in fact, not mined bitcoins.  Plaintiff was aware, through Mr. Gallancy's due diligence and otherwise, that Alydian was and is the only defendant engaged in bitcoin mining activities.

23.     The Court finds that CoinLab established that it does not have bitcoin mining capacity or infrastructure.  CoinLab does not maintain, own or operate any bitcoin mining rigs or own the associated intellectual property required to manufacture or implement those rigs.

**1. Best Efforts and the Business Judgment Rule**

24.     As CoinLab has no bitcoin mining operations and, therefore, no "mined" bitcoins, Plaintiff alleges that CoinLab breached its obligation to use "best efforts" to mine bitcoins.

25.     Mr. Olsen and Mr. Vessenes testified regarding their direct experience with Alydian, which has filed for Chapter 11 bankruptcy protection in the Western District of Washington.  Mr. Vessenes and Mr. Olsen have direct knowledge regarding the economic viability of launching a bitcoin mining enterprise and, in their reasonable business judgment, concluded that a bitcoin mining enterprise was not likely to return operating and capital expenditures.

26.     A best efforts clause does not require CoinLab to engage in a business venture that will lose money and threaten the viability and solvency of CoinLab's business.  A best

efforts clause imposes an obligation to act with good faith in light of one's own capabilities. *Serdarevic v. Centex Homes, LLC*, 2012 U.S. Dist. LEXIS 134349, *42 (S.D.N.Y. Sep. 5, 2012). A best efforts clause permits a degree of discretion in the selection of a plan of action and allows parties to rely on their good faith business judgment as to the best way to achieve a desired result. *Bloor v. Falstaff Brewing Corp*., 601 F.2d 609, 614 (2nd Cir. 1979).

27.    Courts generally do not hold a party responsible for failing to use best efforts when changing circumstances which are not the result of the conduct of the allegedly breaching party have rendered the defendant incapable of performing. *See Serdarevic v. Centex Homes, LLC,* 2012 U.S. Dist. LEXIS 134349, *42 (S.D.N.Y. Sep. 5, 2012); *Mofet Etzion, Ltd. v. Gen Dynamics Land Sys*., 2008 U.S. Dist. LEXIS 11362 (S.D.N.Y. Feb. 4, 2008); *Farey-Jones v. Buckingham*, 2004 U.S. Dist. LEXIS 12480 (E.D.N.Y. July 7, 2004). Courts are also averse to finding a best efforts clause violated where there is no evidence of bad faith. *See McDonald's Corp. v. Hinksman*, 1999 U.S. Dist. LEXIS 9587, *38-39 (E.D.N.Y. May 28, 1999). Plaintiff has not established that CoinLab acted in bad faith or that CoinLab has the capacity to mine 7,984.006735 bitcoins.

28.    Plaintiff provided no evidence of the financial viability of a bitcoin mining operation or otherwise rebut CoinLab's assertion that bitcoin mining could not be done in a financially viable manner. In fact, Mr. Gallancy, a certified financial analyst, testified that he had prepared detailed financial models of Alydian's bitcoin mining operations but did not submit those models into the Court record. Plaintiff provided no financial models, evidence or specific testimony stating that bitcoin mining can be currently performed in a manner that returns capital and operational expenses.

29.    The parties dispute whether it was the intent of the Amended Agreement that Plaintiff was to receive funds net of mining and operational expenses. Mr. Olsen and Mr. Vessenes testified that it was the understanding of the parties at the time of contract that the proceeds from the bitcoin mining rigs (i.e., bitcoins) would be used to fund the capital and operational expenses of the bitcoin mining operation. Mr. Gallancy testified that he believed

that Defendants were responsible for paying all operational and capital expenditures without using the revenue from the bitcoin mining operation.  According to Plaintiff, CoinLab was required not to use its revenue for any purpose other than to pay Plaintiff.  Plaintiff, however, provided no evidence supporting his assertion that there was a meeting of the minds that Defendants bitcoin mining operation would be independently funded without use of the revenue from the operation.  Mr. Gallancy further testified that he believed the Amended Agreement gave both the Plaintiff and Defendants the authority not to approve capital and operational expenses for bitcoin mining.  The Court finds Plaintiff has not satisfied its burden of proving that Defendants bitcoin mining operation would be independently funded without use of the revenue from the mining activities.

30.     The Court finds that Plaintiff has not sustained its burden on preliminary injunction that CoinLab violated its obligations to use best efforts to mine bitcoins.

### *2.* **Disclaimer of Warranties**

31.     Additionally, the Amended Agreement provides a defense to CoinLab under the "Disclaimer of Warranties" clause in the document.  The Amended Agreement states,

> SERVICES AND BITCOINS ARE THE RESULT OF RELATIVELY NEW TECHNOLOGIES AND MARKET EXCHANGES AND MAY BE SUBJECT TO FUTURE LAWS, REGULATIONS, CHANGES IN TECHNOLOGY, AND OTHER FORCES, NOT WITHIN COINLAB'S CONTROL, AND THAT SUCH CHANGES COULD RENDER THIS AGREEMENT IMPRACTICABLE OR IMPOSSIBLE TO PERFORM…ALL ASSOCIATED RISKS RESIDE WITH CUSTOMER.

Amended Agreement at ¶10 (emphasis in original).  The plain language of the "Disclaimer of Warranties" in the Agreement is broad.  Customer bears "all associated risks" from "changes in technology and other forces, not within CoinLab's control" that would render the agreement "impracticable."  Miriam Webster's Dictionary defines "impracticable" only as "incapable of being performed or accomplished by the means employed or at command; difficult or impossible to do or use; an impracticable proposal."   Impracticability affords CoinLab considerable discretion to exercise its valid business judgment.

32.     Mr. Olsen testified that the Alydian bitcoin mining rigs operated using a 65

nanometer (nm) chip size and the bitcoin mining network was accelerating at a faster rate than anticipated, which would effectively render the 65 nm chip size obsolete in the near future. Mr. Olsen further testified that the costs for launching bitcoin mining rigs was substantially higher than projected due to acceleration fees and other unexpected capital and operational expenses outside of Alydian's control. Mr. Olsen testified that, applying his direct experience with Alydian to a potential new bitcoin mining operation on behalf of CoinLab, would be impracticable due to forces outside of CoinLab's control.

33. Defendants presented evidence that mining difficulty increased stratospherically, well beyond expectations and that mining requires exponentially more expensive hardware than it did when Plaintiff became a customer. This increase, which is completely out of the control of any Defendant, has made the contract impracticable. Plaintiff was aware of and assumed this risk at the time of contract. The speed of the bitcoin mining network has increased so dramatically, it is no longer cost-effective to engage in mining operations in a manner that will return capital and operational expenditures.

34. CoinLab alleges that the disclaimer that the parties agreed to came to fruition, as changes in "TECHNOLOGY, AND OTHER FORCES, NOT WITHIN COINLAB'S CONTROL" rendered bitcoin mining and compliance with the Amended Agreement impracticable. The change in forces outside of CoinLab's was twofold. First, there was a dramatic increase in the speed of the bitcoin mining network making bitcoin mining rigs less effective and, therefore, less profitable. Moreover, there was a corresponding increase in the cost of manufacturing bitcoin mining rigs.

35. The Amended Agreement is further clear that the "Customer" bears the risk of loss under the contract and knowingly accepted incurred the risk of nonperformance for an emerging technology and market.

36. The Court finds that the bitcoin mining network speed and unexpected increases in the cost for bitcoin mining capacity are technologies and "other forces" outside of Defendants' control.

### 3. **Standing**

37.     Finally, CoinLab asserts that Plaintiff Bitvestment Partners LLC has not demonstrated that it has standing to assert claims under the Amended Agreement.

38.     The Amended Agreement was assigned to Dalsa Barbour, LLC, the real party in interest.  There is no dispute that the Amended Agreement cannot be further assigned without written consent of all parties.  *See* Amended Agreement at ¶ 11(a).  Bitvestment Partners LLC, however, asserts that it is the entity formerly known as Dalsa Barbour, LLC and that there was no assignment.  Plaintiff however, provided no evidence in support of this allegation other than the self-serving declaration of Mr. Gallancy, the principal of Plaintiff.  Plaintiff provided no records from the New York Secretary of State or other corporate documents demonstrating the alleged name change.  Without evidentiary support, the Court cannot find in support of Plaintiff on the question of standing and, therefore, Plaintiff's Motion for Preliminary Injunction must be denied on that ground as well.

### III.     CONCLUSION

39.     Plaintiff has not demonstrated either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant.  Plaintiff's Motion for a Preliminary Injunction is denied.

DATED:  Seattle, WA
         January 9, 2014

                           Respectfully submitted,

                           BRESKIN JOHNSON & TOWNSEND PLLC

                           By: s/ Roger M. Townsend
                               Roger M. Townsend, Admitted *Pro Hac Vice*
                               1000 Second Avenue, Suite 3670
                               Seattle, WA 98101
                               (206) 652-8660
                               rtownsend@bjtlegal.com

SUSMAN GODFREY L.L.P.
Seth Ard
560 Lexington Avenue, 15th Floor
New York, NY  10022
Phone:  (212) 336-8330
sard@susmangodfrey.com

NESENOFF & MILTENBERG LLP
Marco Santori
363 Seventh Avenue, 5th Floor
New York, NY 10001
Phone: (212) 736-4500
msantori@nmllplaw.com

*Attorneys for Defendants CoinLab, Inc. and Peter Vessenes*